**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| _____x | | |
| JAMES CARNICELLI JR., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 3:21-cv-00792-RNC |
| -against- | : | |
| | : | |
| JOHN J. FARERI, JULIE FARERI | : | |
| CHRISTOPHER SHESKIER AND THE | : | |
| GATEWAY DEVELOPMENT GROUP, INC., | : | |
| | : | |
| Defendants; | : | |
| and | : | |
| | : | |
| JAMES CARNICELLI JR., | : | |
| | : | |
| Derivative Plaintiff, | : | |
| vs. | : | |
| | : | |
| JOHN J. FARERI, JULIE FARERI | : | |
| CHRISTOPHER SHESKIER, | : | |
| | : | |
| Derivative Defendants, | : | |
| and | : | |
| | : | |
| THE GATEWAY DEVELOPMENT | : | June 14, 2021 |
| GROUP, INC. | : | |
| Nominal Defendant. | : | |
| _____x | | |

**MOTION FOR TRANSFER OF VENUE**
**PURSUANT TO 28 U.S.C. §1412 AND FED. R. BANKR. P. 7087**

Howard P. Magaliff, as Chapter 7 trustee (the "Trustee") of the bankruptcy estate of

The Gateway Development Group, Inc. ("Gateway" or "Debtor"), hereby moves to transfer

venue of this removed proceeding to the United States Bankruptcy Court for the Southern

District of New York (the "Bankruptcy Court") for administration under Gateway's Chapter

**ORAL ARGUMENT REQUESTED**
 **IF OPPOSITION FILED**

1

7 case, Case No. 21-22304 (RDD) (the "Chapter 7 Case"), or alternatively, to the United States District Court for the Southern District of New York, where it is expected it would be referred to the Bankruptcy Court under the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).

In support of this motion, the Trustee respectfully represents.

## PROCEDURAL BACKGROUND

1. On May 25, 2021, Gateway filed a voluntary chapter 7 petition in the Bankruptcy Court, whereupon the Trustee was appointed Gateway's chapter 7 Trustee. The Chapter 7 Case is subject to a motion to dismiss filed by the Plaintiff in the Civil Action, James Carnicelli, Jr. (Chapter 7 Case, ECF Nos. 17, 19, 23), which is scheduled for hearing on July 12, 2021. The Trustee expects that the motion to dismiss will be opposed by other parties in the case.

2. At the time of commencement of the Chapter 7 Case, a state court civil action under the caption *CARNICELLI, JR, JAMES v. FARERI, JOHN J Et Al*, and with the Docket No. FST-CV-20-6048778-S (the "Civil Action"), was pending before the Connecticut Superior Court in and for the Judicial District of Stamford/Norwalk at Stamford, (the "State Court"). In the Civil Action, the Debtor is a plaintiff derivatively through the plaintiff, James Carnicelli, Jr. ("Carnicelli"), as well as a defendant and nominal defendant.

3. While in operation, the Debtor was in the construction services business. Carnicelli was the President of the Debtor and is a 49% shareholder. The other defendants in the Civil Action are John J. Fareri, the 51% shareholder and chairman of the board of directors of the Debtor, Julie Fareri, his daughter and an officer of the Debtor, and

Christopher Sheskier, who was the Chief Financial Officer of the Debtor

4.     The Civil Action asserts certain derivative claims – ones that are derivative of the Debtor – against directors and officers of the Debtor (John J. Fareri, Julie Fareri and Christopher Sheskier) for alleged breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, statutory theft, conversion, and unfair trade practices, all based on alleged misappropriation of corporate opportunities and assets and other corporate wrongdoing that harmed the Debtor; other claims are asserted that are either against the Debtor or are so related to the Debtor or its Chapter 7 Case that bankruptcy and supplemental jurisdiction may be properly exercised over them.  *See generally* 28 U.S.C. § 1367(a) (district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

5.     On June 10, 2021, the Trustee, by his chosen counsel, filed a Notice of Removal[1] for the removal of the State Court Action to this Court pursuant to 28 U.S.C. § 1452(a) and Fed. R. Bankr. P. 9027.   On June 11, 2021, an Amended Notice of Removal was filed which, in substance, added the signature of the Trustee as a named partner in his firm, Rich Michaelson Magaliff, LLP, which was approved by order entered on June 1, 2021 to represent the Trustee (Chapter 7 Case, ECF No. 10)[2].

6.     The causes of action asserted in the Civil Action are in summary: (i) judicial

---

[1] On June 10, 2012, before the Notice of Removal was filed, the Trustee filed an application with the Bankruptcy Court to retain Pullman & Comley, LLC ("P&C") as his special counsel under 11 U.S.C. § 327(e), effective as of June 9, 2021 (Chapter 7 Case, ECF No. 28).  The proposed order accompanying that application was endorsed with the non-objection of the United States Trustee for Region 2.  Carnicelli has objected to P&C's retention in the Bankruptcy Case, but not on grounds that P&C does not satisfy the standards for retention under 11 U.S.C. § 327(e).

[2] The Amended Notice of Removal was filed because counsel for the Plaintiff in the Civil Action had complained that an order of the Bankruptcy Court had not yet entered approving P&C's employment and called into question the effectiveness of the Notice of Removal.

dissolution of the Debtor; (ii) a TRO, and permanent and temporary injunction against all defendants (iii) breach of contract against John Fareri and the Debtor, (iv) violation of C.G.S §31-72 against John Fareri and the Debtor for failure to pay wages, (v) breach of the covenant of good faith and fair dealing against John Fareri and the Debtor, (vi) violation of Connecticut's Unfair Trade Practices Act ("CUTPA") against the individual defendants, (vii) fraud against John Fareri, (viii) derivative claim for breach of fiduciary duty against the individual defendants, (ix) derivative claim for aiding and abetting breach of fiduciary duty against Julie Fareri and Sheskier, (x) derivative claim against John Fareri for statutory theft of corporate assets under C.G.S. §52-564, (xi) derivative claim against John Fareri for conversion of corporate assets, (xii) derivative claim against  the individual defendants under CUTPA based on diversion of corporate assets and other corporate wrongdoing.  By Memorandum of Decision of the State Court entered on March 5, 2021, the CUTPA cause of action that was pled as a non-derivative claim was dismissed.

7.     The dissolution, CUTPA and derivative claims are all essentially based on allegations that John Fareri, with the assistance of Julie Fareri and Christopher Sheskier, diverted profits of the Debtor to related companies of John Fareri by underpaying the Debtor for services it performed for those companies, improperly terminated the Debtor's operations and transferred its workforce and assets to the other Fareri-owned companies, and improperly altered or misstated the Debtor's financial records in such a way as to hide the corporate misappropriation.  The breach of contract and unpaid wage claims are principally based on the Debtor's failure to pay Carnicelli his contractual salary and John Fareri's misstating the corporate books and records and his firing of Carnicelli as President. The breach of the implied covenant of good faith claim relates to a shareholder agreement to

which John Fareri, Carnicelli and the Debtor are parties, and claims that the implied

covenant was breached by the failure to operate the Debtor in the best interests of the

company, its shareholders and creditors.  The fraud claim against John Fareri is based on

alleged false representations by John Fareri to Carnicelli that the latter would earn

significant profits as a shareholder, when John Fareri knew he would be diverting those

profits or eliminating them by causing other companies he owned to underpay the Debtor on

various projects.

**RELIEF REQUESTED**

8.     The Trustee seeks an order transferring the venue of the Civil Action, now

before this Court as a removed action, to the Bankruptcy Court pursuant to 28 U.S.C. § 1412

and Fed. R. Bankr. P. 7087.

**BASIS OF RELIEF REQUESTED**

A.     *Procedure for Transfer after Removal*

9.     As one well-respected bankruptcy treatise has observed:

> … when an action has been commenced in a state court and
> removed to a federal court in a judicial district different from
> the one in which an umbrella bankruptcy case is pending, a
> litigant … frequently moves under 28 U.S.C. § 1412 to transfer
> the action to the forum in which the umbrella bankruptcy case
> is pending.

10 COLLIER ON BANKRUTPCY ¶7087.02, at p. 7087-13 (Richard Levin & Henry

Sommer eds., 16th ed. 2021).  In this paradigm, "[s]everal of the more recent cases … have

used a helpful definitional structure, referring to the forum in which the underlying

bankruptcy case is pending as the 'home court,' and referring to their own courts, to which

the state court action was removed, as the 'local court' or 'outpost court'." *Id.* at p. 7087-14.

10.     The transfer of cases and civil proceedings under title 11 of the United States

5

Code, *i.e.*, the Bankruptcy Code, is governed by 28 U.S.C. § 1412, which provides:

> A district court may transfer a case or proceeding under title 11
> to a district court for another district in the interest of justice or
> the convenience of the parties.

11.     When the removal of a state court action is effected with a view to

transferring it to a bankruptcy court in a district other than the district where the state court

action is pending, two steps must be followed:

> First, a state court action subject to removal under 28 U.S.C. §
> 1452(a) must be removed to the district court in the district
> where the state court action is pending by filing a notice of
> removal. 28 U.S.C. § 1452(a); Fed. R. Bankr.P. 9027(a)(1).
> Second, a motion to transfer must be filed requesting the
> transfer of the litigation to the desired bankruptcy court in the
> other district. 28 U.S.C. § 1412; Fed. R. Bankr.P. 7087.

*In re Advance Iron Works, Inc.*, 495 B.R. 404, 408 (Bankr. S.D. Ill. 2013).  *See also*

*Renaissance Cosmetics, Inc. v. Development Specialists Inc.*, 277 B.R. 5, 11 (S.D.N.Y.

2002).  For the second step, the transfer may be made directly to the Bankruptcy Court

pursuant to 28 U.S.C.§ 157(a) and the Amended Standing Order of Reference from the United

States District Court for the Southern District of New York, dated January 31, 2012 (Preska,

C.J.).  *Fund, LLC v. Reed Smith, LLP* (*In re Aramid Entertainment*), 2021 WL 1716641, at *4

(Bankr. S.D.N.Y. Apr. 30, 2021).  *See also Marroquin v. Taylor Bean & Whitaker Mortg. Corp.*,

2013 WL 1703867, at *3 (Bankr. W.D. Tex. Apr. 19, 2013) (transferring case that had been

removed from the Texas state court to the bankruptcy court in which the chapter 11 case was

pending).

      B.     *Applicability of 28 U.S.C. § 1412*

10.     Although some courts construe 28 U.S.C. § 1412 to apply only to "core"

proceedings, *see Tutlex Corp. v. Freeze Kids, L.L.C.*, 252 B.R. 32,35 (S.D.N.Y. 2000), and even

more narrowly, only to cases or proceedings "arising under title 11," *Multibank Inc. v. Access Global Capital, LLC*, 594 B.R. 618, 622 (Bankr. S.D.N.Y. 2018), the better view and the one that appears to be endorsed by Collier's treatise, is that even civil proceedings that fall within a bankruptcy court's "related to" jurisdiction may be transferred under 28 U.S.C. § 1412. *See* 1 COLLIER ON BANKRUPTCY ¶4.05[2], at p. 4-33-34 ((Richard Levin & Henry Sommer eds., 16th ed. 2021) ("[s]ome cases hold that section 1412 applies only to core proceedings, a result that finds no support in the statute, while a number of courts have held that motions to transfer the venue of civil proceedings should be solely governed by section 1412"). *See also TitanUrbi21, LLC v. GS Oilfield Services, LLC*, 2020 WL 5066943, at *3 (N.D. Texas, Amarillo Division Aug. 27, 2020) (following *Leal v. Bednar*, 2017 WL 565176, *2 (N.D. Tex. Feb. 13, 2017), which in turn, followed *Marquette Transp. Co. v. Trinity Marine Prod., Inc.*, 2006 WL 2349461, *4 (E.D. La. Aug. 11, 2006)); *Gibbs v. Rees*, 2018 WL 1460705, at *9-10 (E.D. Va. Mar. 23, 2018); *Yolo Capital, Inc. v. Normand*, 2018 WL 576316, at *2 (W.D.N.C. Jan. 26, 2018); *Hilton Worldwide, Inc. Global Benefits Committee v. Caesars Entertainment Corp.*, 532 B.R. 259, 272-73 (E.D. Va. 2015).

11.     It is submitted that the view articulated by the Bankruptcy Court for the Southern District of New York in *Multibank*, and in other cases from that district, is flawed. This contrary view relies on the words, "proceeding under title 11," in section 1412 to come to the conclusion that only "proceedings *arising* under title 11," *i.e.* a proceeding "that asserts causes of action that are created under the Bankruptcy Code," *Multibank*, 594 B.R. at 622, may be subject to transfer under that section.

12.     In support of its position, the *Multibank* court cited three different statutory sections, all of which included the word, "arising," immediately preceding the word,

"under,"[3] to make the point that a "proceeding under title 11" as used in 28 U.S.C. § 1412 must mean that the proceeding must "arise" under title 11.  Yet the word "arising," does not appear in 28 U.S.C. § 1412, and a well-established rule of statutory construction is that "when 'Congress includes particular language in one section of a statute but omits it in another' …," the presumption is "that Congress intended a difference in meaning." *Loughlin v. U.S.*, 573 U.S. 351, 358, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)).  Collier's recognizes the force of this crucial omission, but does not mention the above-referenced rule of statutory construction, which gives the interpretation advanced here even more force:

> But section 1412 articulates its coverage differently; the words "case or proceeding under title 11" in section 1412 are further limited only by the single word, "under" – leaving out the word "arising" that precedes "under" in each of 28 U.S.C. §§ 1334(b) 157, and also 28 U.S.C. § 1409.  Some might argue that the omission of "under" leads to a contrary result, and that proceedings under title 11" is simply a shorthand for saying that it applies in all cases in which subject matter jurisdiction exists under the bankruptcy-related jurisdictional statute, 28 U.S.C. § 1334.

10 COLLIER ON BANKRUTPCY ¶7087.01, at p. 7087-10 n. 44 (Richard Levin & Henry Sommer eds., 16th ed. 2021).  Thus, the Trustee contends that 28 U.S.C. § 1412 is the applicable section for transferring venue of proceedings that not only arise under the Bankruptcy Code, but that arise in, or are related to, a bankruptcy case.

    C.    *Nature of Claims and Bankruptcy Jurisdiction*

    13.    In any event, there is little question that all derivative claims asserted in the

---

[3] *Multibank* cited 28 U.S.C. § 1334(b), which states that district courts have jurisdiction over "civil proceedings arising under title 11 or arising in or related to a case under title 11," 28 U.S.C. § 157(a), which states that the district court may refer civil proceedings "arising under title 11, or arising in or related to a case under title 11" to bankruptcy judges, and 28 U.S.C. § 1409, which defines the proper venue for civil proceedings "arising under title 11 or arising in or related to a case under title 11."  *Multibank*, 594 B.R. at 622.

Civil Action belong to the Trustee as property of the estate, that the Trustee is the only party with standing to prosecute them, and that they are claims within the Bankruptcy Court's core jurisdiction. As the Second Circuit explained in *The Anadarko Litigation Trust v. Kerr-McGee Corp.* (*In re Tronox, Inc.*), 855 F.3d 84 (2d Cir. 2017), the bankruptcy trustee is the proper person to assert "common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion," *id.* at 99 (internal citation and quotation omitted), and that "'derivative claims' – *i.e.* claims 'based on rights derivative of, or derived from, the debtor[ ] – typically constitute 'property of the estate'." *Id.* at 99 (internal citation and quotations omitted).

14.     The Second Circuit further explained that "'[d]erivative claims in the bankruptcy context are those that 'arise from harm done to the estate' and that 'seek relief against third parties that pushed the debtor into bankruptcy'." *Id.* at 100 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 89 (2d Cir. 2014) (internal quotation and citation omitted)). To further make the point, the Second Circuit summarized its decision in *Madoff*, where it "considered whether claims by a creditor against a non-debtor were derivative of claims that were asserted and settled by" the Madoff trustee …." *Id.* at 100. In particular, the claims asserted by the trustee in *Madoff* were against "Madoff co-conspirator Jeffrey Picower and other defendants, based on their alleged improper withdrawals of more than $6.7 billion from" Madoff's company, which were held to bar later claims brought by creditors of the estate against the same defendants for, "among other things, civil conspiracy and conversion based on similar allegations." *Id.* at 101 (citing *Madoff*, 740 F.3d at 85, 87). The latter claims were held to be derivative of the trustee's claims – and barred – because they "'alleged injuries … inseparable from, and predicated upon, a legal injury to the

estate," and where the "damages suffered "'still remained mere secondary harms flowing from the Picower defendants' fraudulent withdrawals and the resulting depletion of" Madoff company funds. *Id.* at 102 (citing *Madoff*, 740 F.3d at 92, 90). *See also Collins v. Sydow* (*In re NC12, Inc.*), 478 B.R. 820, 834-35 (Bankr. S.D. Tex. 2012) (shareholder oppression claim against former officers and directors of debtor based on stripping of corporate assets for their own personal gain, misappropriating corporate assets and self-dealing and thwarting investigation of company's accounting practices was derivative and held to be property of the estate).

15. In a strikingly similar case to the instant matter, a creditor of the debtor, Atlas Fence, brought claims in Connecticut Superior Court against an individual, D'Angelo, and his company, Rickster, for assisting Atlas Fence and its principal, Michael Picard, in transferring assets out of the reach of Atlas's creditors; causes of action were asserted for civil conspiracy, aiding and abetting a breach of fiduciary and fraud and violations of CUTPA. *Master Halco v. D'Angelo¸* 351 B.R. 267, 269 (D. Conn. 2006). The defendants' removed the action from state court pursuant to 28 U.S.C. §§ 1452 and 1334 on the ground that it was related to two pending bankruptcy proceedings involving Atlas and Picard, and plaintiff moved to remand. *Id.*

16. In *Master Halco*, this Court (Arterton, J.) first held that there was at least "related to" bankruptcy jurisdiction under 28 U.S.C. § 1334 as a basis for removal of the state court action because its outcome, if successful, would result in plaintiff taking possession of assets that might otherwise belong to the bankruptcy estate and, therefore, the action might have an effect on the bankruptcy estate. *Id.* at 270. In denying the plaintiff's request for remand and mandatory abstention, the Court went further in holding that the

plaintiff's claims were within the bankruptcy court's "core" jurisdiction under 28 U.S.C. §

157(b)(2)(A) and (H) because they sought to recover assets that were alleged to have been

"transferred out of the debtors' estates and into the hands of the defendant, Rickster" and

other entities.  *Id.* at 272 (quoting *Cent. Vt. Public Serv. Corp. v. Herbert*, 341 F.3d 186, 192

(2d Cir.2003) for the proposition that the "bankruptcy trustee is the proper person to assert

claims against the debtor's alter ego or others who have misusecd the debtors property in

some fashion, and by extension, we have held that such alter ego claims are core

proceedings.").

17.    There is no practical difference between Carnicelli's derivative claims against

John Fareri and the other officers of the Debtor and the claims at issue in the Second Circuit

decisions summarized in *Tronax*, or the state court claims asserted in *Master Halco*, as they

all seek to recover damages for harms that were inflicted on the bankruptcy debtor.  Thus,

these claims belong to the Trustee, are property of the Debtor's estate, and are within the

Bankruptcy Court's core jurisdiction.

18.    Most of the other claims in the Civil Action are "core" claims as well.  The

breach of contract, statutory unpaid wages, and breach of the implied covenant causes of

action are against both John Fareri and the Debtor, and thus are core proceedings under 28

U.S.C. § 157(b)(2)(B) (core proceedings include "allowance or disallowance of claims

against the estate").  And to the extent they seek liability against John Fareri personally,

their "outcome might have a conceivable effect on the bankruptcy estate," *Master Halco,*

351 B.R. at 270, and thus are "related to" the Chapter 7 Case, because if John Fareri is held

liable it could reduce or eliminate the Debtor's liability.  The fraud cause of action, while

against John Fareri alone, is at least "related to" the Chapter 7 Case because it based on

allegations that support the other derivative causes of action in the state court complaint.

19.     Alternatively, even if they are not within the Bankruptcy Court's core or even related to jurisdiction, all non-derivative causes of action in the Civil Action are within the Bankruptcy Court's supplemental jurisdiction under 28 U.S.C. §1367(a), which provides that a district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

20.     In *Klein v Civale & Trovato, Inc.* (*In re Lionel Corp.*), 29 F.3d 88, 92 (2d Cir. 1994), the Second Circuit held that bankruptcy courts may invoke the supplemental jurisdiction of §1367(a).  This holding has been followed by a number of lower courts in the Circuit to uphold the exercise of supplemental jurisdiction by bankruptcy courts with respect to claims asserted by one non-debtor against another non-debtor.  *See Cavalry Construction, Inc. v. WDF, Inc.* (*In re Cavalry Construction, Inc.*), 496 B.R. 106, 112-14 (S.D.NY. 2013).  It is submitted that all of the non-derivative claims in the Civil Action are so related to the derivative claims that they form part of the same case or controversy, by reason of which the Bankruptcy Court may exercise supplemental jurisdiction over them.

D.     *Standards for Transfer of Venue*

21.     Under 28 U.S.C. §1412, a proceeding may be transferred "in the interest of justice or for the convenience of the parties."

22.     In determining whether to transfer a proceeding to another district under section 1412, "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." *Gulf States Exploration Co. v. Manville Forest Products* (*In re Manville Forest Products*

*Corp.*), 896 F.1384, 1391 (2d Cir. 1990).  This presumption has been found to a "strong

one."  *Campbell v. Williams*, 2015 WL 3657627, at \*4 (S.D. Tex. June 12, 2015);

*Commonwealth Assisted Living, LLC, Series E v. Vestavia Hills, Ltd.*, 616 B.R. 159, 175

(Bankr. N.D. Ala. 2020) (stating that "'[t]he interests of the bankruptcy estate are

paramount,' and these interests create 'the strong presumption in favor of the 'home

court.'") (quoting  *RFF Family P'ship, LP v. Wasserman*, 2010 WL 420014, at \*8, (N.D.

Ohio Jan. 29, 2010) (citations omitted)); *Bavelis v. Doukas* (*In re Bavelis*), 453 B.R. 852,

869 (Bankr. S.D. Ohio 2011).

      23.    Collier's has capsulized the factors courts have considered in transferring a

proceeding "in the interest of justice" as follows:

—     economics of estate administration
—     presumption in favor of home court
—     judicial efficiency
—     ability to receive a fair trial
—     the state's interest in having local controversies decided within its borders, by those familiar with its laws
—     enforceability of any judgment rendered; and
—     plaintiff's original choice of forum

10 COLLIER ON BANKRUTPCY ¶7087.02, at p. 7087-16 (Richard Levin & Henry

Sommer eds., 16th ed. 2021).  A number of courts "have held that the most important factor

to be considered in determining whether to transfer venue of a bankruptcy proceeding under

the interests of justice prong is whether the transfer would promote the economic and

efficient administration of the bankruptcy estate."  *Id.* at p. 7087-18 n. 22 and accompanying

text.

      24.    The Trustee submits that a consideration of these factors overwhelmingly

favors transfer of the Civil Action to the Bankruptcy Court.  Inasmuch as Trustee will now

be prosecuting the derivative claims against the individual defendants, which are property of

the estate, their litigation along with the other related claims in the Bankruptcy Court will be more economical and efficient for administering the Chapter 7 Case.  It cannot be seriously questioned that the Bankruptcy Court would not provide all parties with a fair trial, and any judgment can easily be enforced by domesticating it in the state in which the defendants reside or have assets.  These factors, combined with the presumption that the home court is the appropriate court in which to adjudicate the Civil Action, far outweigh any countervailing factors.

25.     The factors that have been cited for the alternative basis for transfer based on "the convenience of the parties" were capsulized by Collier's as follows:

—     location of the plaintiff and defendant
—     ease of access to necessary proof
—     convenience of witnesses
—     availability of subpoena power for unwilling witnesses; and
—     expense relating to obtaining witnesses

10 COLLIER ON BANKRUTPCY ¶7087.02, at p. 7087-17 (Richard Levin & Henry Sommer eds., 16th ed. 2021).

26.     All of these factors support transfer as well.  Carnicelli and Sheskier, as well as the Trustee, are located in New York, and John and Julie Fareri are believed to be located in lower Fairfield County, which is in close proximity to the Bankruptcy Court in White Plains, New York.  Therefore, no party will be inconvenienced by having the Civil Action administered and adjudicated by the Bankruptcy Court in White Plains and all necessary witnesses should be within the subpoena power of the Bankruptcy Court.

27.     The Trustee respectfully requests that the Court waive the requirement of filing a memorandum of law with this motion, as the factual predicates and legal authorities relied upon for the relief requested in the motion are fully set forth herein.

**WHEREFORE,** the Trustee respectfully requests that the venue of the Civil Action be transferred to the Bankruptcy Court and that the Court grant such other or further relief as it may deem just, equitable and proper.

Dated: Bridgeport, Connecticut
      June 14, 2021

HOWARD MAGALIFF,
CHAPTER 7 TRUSTEE OF GATEWAY
DEVELOPMENT GROUP, INC.

By: /s/Irve J. Goldman
    Irve J. Goldman (ct02404)
    Pullman & Comley, LLC
    850 Main Street, P.O. Box 7006
    Bridgeport, CT  06601-7006
    Tel: 203 330 2213
    igoldman@pullcom.com
    His Attorneys (Application Pending)

Dated: New York, New York
      June 14, 2021

HOWARD MAGALIFF,
CHAPTER 7 TRUSTEE OF GATEWAY
DEVELOPMENT GROUP, INC.

By: /s/Howard P. Magaliff
    Howard P. Magaliff (CT11029)
    Rich Michaelson Magaliff, LLP
    335 Madison Avenue, 9th Floor
    New York, NY 10017
    Tel.: 646 453 7851
    HMagaliff@R3MLaw.Com
    Attorneys for the Trustee

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 14, 2021 a copy of the foregoing Motion for Transfer of Venue Pursuant to 28 U.S.C. §1412 and Fed. R. Bankr. P. 7078 was served on the following parties by email and regular mail:

Joseph M. Pastore III, Esq.
Pastore & Dailey, LLC
4 High Ridge Park
Third Floor
Stamford, CT 06905
(203) 658-8454
jpastore@psdlaw.net
(Attorneys for James Carnicelli)

Timothy T. Corey, Esq.
Hinckley Allen & Snyder LLP
20 Church Street
Hartford, CT 06103
(860) 278-3802
tcorey@hinckleyallen.com
Attorneys for John J. Fareri, Julie Fareri,
Christopher Sheskier and The Gateway Development Group, Inc.

Christoper V. Fenton, Esq.
Hinckley Allen & Snyder, LLP
30 South Pearl Street
Suite 901
Albany, NY 12207
(518) 396-3101
cfenlon@hinckleyallen.com
Attorneys for John J. Fareri, Julie Fareri,
Christopher Sheskier and The Gateway Development Group, Inc.

Johanna A. Zelman, Esq.
Ford & Harrison LLP
CityPlace II Suite 610
185 Asylum Street
Hartford, CT 06103
(860) 578-2075
jzelman@fordharrison.com
Attorneys for John J. Fareri and The Gateway Development Group, Inc.


/s/Irve J. Goldman
Irve J. Goldman

ACTIVE/82417.1/IJG/9615860v1